1380, Gamecaster v. Dreamworks. Mr. Bright. Good morning. My name is Pat Bright. I represent the appellant in this appeal from the patent from the PTAB in a so-called inter-parties re-examination. In such re-examination, as the court may know, there are usually three parties. The patentee, the petitioner, their lawyers are here today, and the patent office itself. And while the patent office did participate in the proceedings up to and including the briefing at the PTAB, the patent office is not participating in this appeal directly, but has rather left that task to the petitioner. So that's why there are just two of us and not three. The decision of the board, rendered nearly a year after we had an argument, is limited to a single obviousness finding. That obviousness finding is predicated on two references, one of which we've called the Vincent patent, and the other is an article by an individual named Paley. The Vincent patent was fully considered in the original proceedings before the patent office, and the patent office issued in allowing the claims of the patent to issue, including those that are on appeal here unamended from the original text. The patent office wrote, this is at 1233-1234 of the appendix, and I think it's worth reading because it has a bearing here. The prior art teaches the use of camera-controlled devices in which a camera is controlled by receiving information from sensors, such as horizontal rate sensors, vertical rate sensors, pan and tilt sensors. Further, the prior art teaches the use of camera systems that enable a virtual environment to be generated that has a virtual camera generated using a software application, wherein the view in the virtual environment can be changed based on information received from motion sensors. However, the prior art systems teach the use of generating the virtual environment, in part, from image data captured from cameras having image sensors, and does not teach that the virtual environment can be generated entirely, entirely without images from cameras having image sensors. Further, there is no motivation to eliminate the use of cameras in the camera-controlled system of the prior art, meaning Vincent, since doing so would destroy the invention of the prior art camera-controlled systems. Further, the prior art camera-controlled systems teaches a way from not using cameras with image sensors and indicates that the use of image data from cameras with image sensors is advantageous to improve the realistic and accurate generation of the virtual environment. Therefore, the prior art doesn't teach or fairly suggest the claimed invention. The claims were loud over the prior art. It is rare, in my experience, and I've been doing this work for more than 40 years, for the patent office to say that the prior art teaches a way, expressly says the prior art teaches a way. This is one of the so-called secondary considerations of unobviousness. Yet, the patent office board gives this no credit at all. They treat Vincent as if it teaches toward the invention, not away from it. Now, I submit that on this appeal, the teaches-a-way finding of the patent office in the original proceedings should be given controlling weight. And if so, then combining Vincent with Paley or anything else, it runs contrary to such a finding. Why do you think it should be given controlling weight? The opinion of the examiner. Because the claims that we have on this appeal were predicated upon this finding. I didn't hear what you said. The claims that are on appeal here are predicated upon this finding. They were never amended in the re-examination proceeding. So, I submit to you that it is rare, very rare in my experience at least, for the patent office to find that a reference not only has been distinguished patently, but that it actually teaches away from the invention. So, I submit that the patent office board made a clear error in finding that it would be obvious to combine this teaching, any teaching from Vincent, with Paley. Even if Paley taught what the board says it did, and Paley doesn't, because Paley teaches a device which uses real-world images. Therefore, Paley does not have a virtual environment generated entirely without images from cameras. And I have the declaration of Mr. Gusson, unopposed by any declaration from my opponent, saying that in Vincent, the purpose of the angular rate sensor and angular acceleration sensor is tracking. Whereas, the potentiometers that Paley says he used were used for motion sensing, not for tracking. And that's why the substitution wouldn't be obvious. There's two different purposes. If you look at the appendix, you will find a declaration from Mr. Paley, produced by my opponents, who brought him to join hands with him. And Paley's declaration is important to my way of thinking, not only for what it says. He says, I know about angular rate sensors, and I know about acceleration sensors. I just chose not to put them in my devices. I chose not to put them in. What he means is, I chose not to put them in to complete the plot, because they don't serve the purpose that I'm interested in, which is motion, not tracking. Now, if he had intended that they be used for the same purpose as Vincent, he could easily have said so. And my opponents were in a position to get his declaration saying so if it were true. But it isn't true, so they didn't get him to say it. But I think we all know the principle that if one party is in control of evidence, that could be telling for their case, or cut against them and they don't produce it, that their opponent, me, is entitled to an inference that that evidence would be against them. So look at Paley's declaration and see what he doesn't say. He doesn't say why he left out angular rate sensors or acceleration sensors. And he did. He says, I knew about them and I deliberately omitted them from the devices I was making. Why? Different purpose. No reason to use them. The patent office itself says that in Vincent the angular rate sensors and acceleration sensors are used for tracking. This isn't something I had to make up. The patent office made that finding in this. So those two things, the fact that the Paley article, if you look at our opening brief, pages six and seven, you'll see what we quote from Paley. Paley's not exactly a model of clarity, but Paley does indicate that he was imaging a doll, a monkey with his cyclops system, whatever that was. Now, my opponents also ask you, invite you to say that, to find that cyclops had memory and that it could record things. But here again, they were in control of Paley and they could have had Paley tell you that that was so. See, the Paley article doesn't say what was in cyclops. It doesn't tell you what mechanisms there were in the device. But they could have told us in a declaration if they wanted to, presumably. But again, they elected not to. Instead, their brief invites you to infer that such things are present. Does the cyclops device have to have some type of memory? No, not if it's just a view, not if it's just something looking at something like a camera looking at a baseball game. Absolutely not. No, that's the point. I think the device was nothing, if it was anything, and it was a failed experiment, frankly, and I make this point in my reply brief, that failed experiments teach away. But Paley captures the view in a virtual environment, does he not? That's what you mean by captured. If you mean recorded, no. Remember the board found that... I mean captures. Captured, they looked at it, just like a camera looks at a baseball game. Just like, but it's in a virtual environment, is it not? Partly, and partly in the real world, because he says he was imaging the monkey. If it's imaging the monkey and it's in a partly virtual environment, then it has to capture it. If you mean record, I disagree with you. It doesn't have to. Okay, so if it doesn't, you can't see it. Is that not correct? No, that's not correct. You can see anything through a viewfinder. So it's simply a viewfinder. As far as we can tell from the write-up, remember the article is pretty thin. It's not a technical article. It's just a review of some things that he did in his shop. In any event, he certainly doesn't say in his declaration that the device was used in a virtual environment, generated entirely without images from cameras using image sensors. Again, he could have said that if it were true. And my opponents were in control of his declaration. So why didn't they have him say it? It's an easy inference. It wasn't the case. But even if it were the case, his device still didn't use angular rate sensors or angular acceleration sensors. It used potentiometers. And he knew about the other devices. He said so in his declaration. He elected not to use them. That's an interesting concept. Wigmore says, and what he's saying goes back to him, evidence willfully suppressed will be viewed as adverse. But he doesn't say things not said will necessarily be viewed as adverse. What the I agree with your honor. But I think here it isn't a willful suppression issue. The issue is whether whether they had control of him. They did. Whether they brought forth his declaration in this case, they did. Whether they could have had him say something that would be favorable to their cause. They could have done. And the opportunity to do a discovery. No, we were in reexamination. And as you know, in reexamination, you're not allowed to take discovery. There's a Fed Circuit case from 1994 that says, sorry, in reexamination, you don't get the protection of the federal rules. You can't take, you can't depose anybody. So we're left with what could they have said? They could have said anything that was favorable to their cause, if truthful. The fact that they don't say these things, I think, permits the inference that these things are not so. Silence isn't suppression. It's simply the absence of saying something. Suppression sounds like an action of hiding the ball or telling a lie. That's different than simply not saying what the fact was. I don't blame them for their reticence. If a guy didn't have something to say that helps them, why say anything? That makes sense to me. So what do we have here on obviousness? We have the patent office's original allowance of the case. This is a 123334 of the appendix. Based on the limitation about no images from cameras having image sensors. We have the same Vincent Patton brought to bear in an obviousness rejection. Notwithstanding the fact that the patent office had already found that it teaches away from what's claimed. And we have Haley's article about something which is altogether murky. But which certainly produces some images from the real world. And so therefore doesn't meet the limitation of the claim. And we have the fact I mentioned this in my reply brief. One of the linchpins of secondary considerations is was the device brought to bear as prior art a success in the real world? Answer no. This product never got off the ground. Otherwise we would have certainly heard about it from our opponents. He said it was an interesting experiment. They tried it on for size. Nothing came of it. It's a failure in the commercial world. No matter how you define it. Let me reserve the rest of my time if I may for rebuttal. Good morning. May please support Charles Barquist for DreamWorks animation. The board's finding that the combination of Haley and Vincent rendered the appealed claims obvious is supported by substantial evidence and should be affirmed. Let me address the points made by Gamecaster this morning. First of all, the finding that Vincent teaches away is not binding. And indeed, of course, Haley was not before the examiner at the time he made that finding. So he was not aware of Haley. Not aware of what Haley did in fact teach. And Haley in fact teaches combining real world camera control, well known camera control techniques with the virtual world. And after all, Gamecaster in its reply brief explicitly acknowledges this. Gamecaster says, quote, and this is on page six of their reply brief, Cyclops uses potentiometers to control the motion of a virtual camera in a wholly virtual environment. That's the invention of the 220 patent and that's what Cyclops taught. Now, Mr. Bright says that Haley actually used real world images. There's nothing to support that. Haley did not have a camera with an image sensor. Haley only talks about a computer animation. Animation implies something, cartoons basically, implies something other than real world image. A computer animation implies an animation that's created by a computer, not by real world images. So that's all that Haley talks about and it only talks about a virtual environment. The monkey is misunderstood, I believe, by Gamecaster. The monkey was a device that had sensors placed at all the joints of the monkey. And if you look closely at that little picture in the Haley article, you'll see little white dots at the joints. And what the monkey did was use those dots, those sensors, to input the particular motion or posture of the monkey into the animation program. And again, Haley talks about this. Haley says that the monkey was a digital input device and there was digital mapping of the joints. So it didn't take a picture, a visual image of the monkey. It took information from the sensors and used those to create an animation. So Gamecaster misunderstands monkey. It's not a question of images. Haley's declaration is actually not part of the record below because the Patent Office found that both the Haley and the Gusson declarations did not meet the requirements of an oath. But the Haley declaration does not support any of Mr. Bright's comments. First of all, Haley's article talks about taking the angle information from the movement of the camera and putting it into the animation program. That is, in effect, rate information. All rate information is is movement over time. And so it talks about taking the movement, the different angles of the camera, and obviously there's a time factor in there in any computer situation. The computer keeps track of time. That's all it is. That's all a sensor can do. All a sensor can do is measure movement over time. So it's exactly what Haley was talking about when the Haley article itself only talked about instrumenting a tripod and taking the angle information and putting it into a computer animation program. So whether Haley actually used potentiometers or accelerometers or gyroscopes or any other kind of sensor, which is, after all, what the patent says is permissible, any type of sensor that will measure displacement or movement is acceptable. That's what the patent itself says. So that's what Haley did. That's all that Haley's article says he did. He instrumented a tripod, take the angle information, and put it into a computer animation program. And Haley, by the way, was not a flop, in Mr. Bright's words. All Haley actually describes having built the device, successfully using it, and selling it to the man who commissioned its creation. What Haley's declaration says is that he also intended to promote it at a trade show. Doesn't say anything about what happened after that. Doesn't say anything about – certainly doesn't say it was a flop. Didn't say that it was a commercial disaster of any kind. That's Mr. Bright's speculation. Well, I suppose if you're commissioned for something and you sell it for the price for which you're commissioned, it's a commercial success. I would think so, Your Honor. And that's all that the article itself indicates. So the idea that the declaration, which, of course, is not prior art in any event, teaches away makes no sense. It's not prior art. It wouldn't have been available to one skill in the art at the time. The Gutson Declaration, as I mentioned, was excluded by the examiner below as not meeting the – during the reexamination proceeding as not meeting the requirements of the oath in the court declaration. That decision was not appealed by Gancaster. It was not appealed to the board, and it was not appealed to this court. So any argument that he might be making implicitly that the Gutson Declaration should have been considered has been waived because he did not challenge the decision of the examiner to find that it was not sufficient under the Patent Office rules. As to whether Paley and Vincent should be combined, Paley is explicit about using real-world camera control devices and methods in a virtual world. I mean, it's almost a classic example of a reference actually having a motivation to combine in it. He says, this is exactly what you should be doing. If you're working in a virtual world, let's go back and use the same techniques, the same methods that are known in the real world. So I think this is a classic case where there's a motivation to combine right in the reference, and the idea that you couldn't combine them, I think, is completely unsupported. Let me address the construction of capturing, which has also been an issue. Of course, the board found that it didn't need to reach that issue, because it found that under either construction of capturing, Paley met that requirement. And it did it at least on the notion that there was capturing on a short-term basis by simply having the display on a flat panel display. That there's an inherent storage of the information that's necessary to hold that image in the pixels on the display. Now, Gancaster says it challenges that conclusion, but Gancaster doesn't wrestle with the fact that that's how flat panel displays actually work. It doesn't challenge that actual fact. In addition, Paley clearly implies that there's long-term storage, because he talks about using the information that's put into the animation program for editing. And this, again, is explicit in Paley, and it's common sense that information you would take to edit would be held for later storage and recording. In addition, under the alternate construction of capture, which I think is the correct one, by the way, clearly Paley captures in terms of actually just obtaining a view. And I think that that's the correct construction, because a real camera with an image sensor doesn't necessarily record. If you think about a live sporting event, it's certainly viewed, it's captured, it's captured on the screen of the camera, and of course it's captured on the broadcast if that's what's being done, but it's not necessarily recorded. It's often recorded, but not necessarily so. You capture that image. And indeed, the patent talks about live sporting events, and the patent itself says that they may be recorded, but of course not necessarily recorded. So I think the construction of capturing as not requiring long-term storage is the correct one. And indeed, the provisional application, if you go back and look at the provisional application, which is I think the last two pages of the appendix, talks about filming or showing. And again, filming may imply recording, but showing certainly doesn't. So the patent itself, or the provisional application itself, indicates that capturing the sense of recording is not required. Unless the Court has any other questions, I have nothing further. Thank you. Thank you. My opponent does not deny in his argument that his client procured the help of Mr. Paley and procured the Paley Declaration. He does not deny that he could have had Paley tell the Patent Office what the device contained, how it operated. What he said was that the Patent Office declined to permit the use of the Declaration. The Patent Office refused to entertain the parts of the Declaration favorable to his cause, but the Patent Office was not in a position to decline to consider admissions against his client. That's different. The Patent Office didn't. The Patent Office just said, I wasn't going to give the Paley Declaration any weight. But the fact is he admitted he didn't use angular rate devices, either accelerometers or angular rate sensors. Now I'll finish my sentence. Require a response. I beg your pardon? I said now I'll finish my sentence. I'm sorry. He didn't let me. Require a response. I beg your pardon. If you've asked me a question, I've missed the point. No, it was a statement. I said it was so speculative it didn't, and at that point you interrupted me. I apologize. Require a response. So I think there is no argument that our claims are limited to angular rate sensors, angular acceleration sensors, or both, and not to potentiometers. I think there is no argument, even presented here today, let alone in the briefs, that the purpose of the potentiometer and the Paley devices was different from the purpose of these devices in either the Vincent patent or in our claims. And that's why it isn't obvious to substitute one for the other. That's why Mr. Paley himself didn't substitute one for the other. He had a different purpose in mind. It would have been contrary to his purposes to put in either an angular rate sensor or an angular acceleration sensor. Now I mentioned in my opening remarks that the Paley article, and I asked the panel to read at least the first six pages of the book. The rest of the article is irrelevant. But if you read the article, you will see, among other things, the board made the finding. There is a device mentioned, which is a device used to scroll through recorded material. And the board made a finding, based on the Paley article, that you could take the output of the Cyclops device and run it through this scrolling device. But that's not what Paley says at all. It doesn't say it at all. I mention it because it shows how obscure the article is, how unclear it is. And how improper it would be to sustain a rejection based on the Vinson patent, which we clearly defined over and the patent was found to teach away. Only to have the board find, in this case, that it teaches toward the idea of substituting the angular rate sensors or angular acceleration sensors for potentiometers  Thank you. We thank both counsel. The case is submitted. That concludes our proceedings.